IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRITTON BRYANT, individually and on behalf of all others similarly situated,**<br><br>*Plaintiff*,<br><br>v.<br><br>**BRUCE PACKING COMPANY INC.,**<br><br>*Defendant.* | Case No.: _____2:24-cv-5636_____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Britton Bryant ("Plaintiff"), brings this Class Action Complaint against Defendant, Bruce Packing Company Inc., ("Defendant") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit individually and on behalf of all others similarly situated who purchased various ready-to-eat foods that contained precooked meat and poultry products that were unfit for their intended use because they were contaminated with *Listeria monocytogenes* bacteria (the "Product").

2. The Product was formulated, designed, manufactured, advertised, and sold by Defendant, or its agents, across the United States. Affected Products were shipped to establishments and distributors nationwide, including restaurants and other food institutions, and

subsequently incorporated into salads, sandwiches, frozen meals and other pre-packaged foods sold at a variety of locations.

3. According to the United States Food and Drug Administration (FDA), *Listeria monocytogenes* (*L. monocytogenes*) is a species of disease-causing bacteria that can survive and even grow under refrigeration and other food preservation measures. Listeria is generally transmitted when food processed, prepared, packed, transported or stored in environments contaminated with *L. monocytogenes*.

4. A disease called "listeriosis" occurs when people eat food contaminated with *L. monocytogenes*. A person infected with listeriosis may experience symptoms within a few hours after eating the contaminated food. More severe forms of listeriosis may take anywhere from three days to three months to develop. Depending on the severity of the illness, symptoms may last from days to several weeks. Mild symptoms may include a fever, muscle aches, nausea, vomiting, and diarrhea. If the more severe form of listeriosis develops, symptoms may include headache, stiff neck, confusion, loss of balance, and convulsions.[1]

5. Many people infected with listeriosis do not seek medical treatment because their symptoms resolve before they can visit the doctor. On average, about 1,600 people are infected with listeria bacteria each year in the U.S. and about 260 die.[2]

6. The severity of listeriosis varies, but the disease can be fatal, especially among the elderly, people with weakened immune systems, or chronic diseases. Though not fatal, listeriosis can be extremely dangerous for pregnant women, causing serious complications with their

---

[1] Listeria (Listeriosis), U.S. Food & Drug Administration, available here: https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis (last accessed October 21, 2024)
[2] *Almost 10 million pounds of meat and poultry dishes recalled due to possible listeria contamination*, CBS News, available here: https://www.cbsnews.com/news/listeria-brucepac-almost-10-million-pounds-meat-poultry-dishes-recall-possible-contamination/ (last accessed October 21, 2024)

pregnancy, including miscarriage, infection of the newborn, and stillbirth. Also, babies born with a listeriosis infection may develop severe health complications that require serious medical attention, lead to lifelong health problems, or result in death.[3]

7. Plaintiff has been caused to purchase a defective product that is worthless, or worth less than the price paid because the Product was contaminated with *Listeria monocytogenes* (*L. monocytogenes*). This action seeks: (i) refunds of the amount Plaintiff and Class Members paid for the Products; (ii) medical expenses for medical treatment provided in relation to listeriosis infections; (iii) lost wages for the period Plaintiff and Class Members were unable to work due to a listeriosis infection; and (iv) other damages as pled herein.

## PARTIES

8. Plaintiff Britton Bryant is an adult resident of Cross, Berkeley County, South Carolina. Plaintiff Bryant purchased the Marketside Caesar Salad with chicken and became ill following consumption of the Product.

9. Defendant, Bruce Packing Company Incorporated, doing business as, "BrucePac" is a domestic corporation, organized under the laws of the State of Oregon, with a principal place of business located at 380 S. Pacific Highway, 99E, Woodburn, Oregon 97071. Upon information and belief, Defendant produced the Product at its production facilities in Durant, Oklahoma and/or Woodburn, Oregon.

## JURISDICTION & VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C.§1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed

---

[3] Listeria (Listeriosis), U.S. Food & Drug Administration, available here: https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis (last accessed October 21, 2024)

3

class, and at least one member of the class, including a named plaintiff, is a citizen of a state different from Defendant.

11. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws, rights, and benefits of the State of Pennsylvania by doing business there including the sale and distribution of its products throughout the State of Pennsylvania.

12. Venue is proper under 28 U.S.C §1391 because Defendant does business in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

13. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

14. Plaintiff Bryant purchased the Marketside Caesar Salad, with chicken from Walmart in Charleston, South Carolina for about $4.94 each.

15. In, or around, August 26, 2024, Plaintiff Bryant consumed the Marketside salad and became sick after eating the meal. Plaintiff's symptoms included diarrhea and other gastrointestinal distress. At the time, Plaintiff did not seek medical attention because he did not know that Defendant's ready-to-eat chicken was the source of the bacteria contamination.

16. Defendant manufactures a full spectrum of fully cooked proteins (i.e., chicken, beef, pork) that are incorporated into other food items sold nationwide at grocery store chains such as Walmart, Kroger, and Trader Joe's. Unfortunately, finished products containing Defendant's

ready-to-eat poultry items produced between May 31, 2024, and October 8, 2024, were adulterated with *Listeria monocytogenes* bacteria.[4]

17. On October 9, 2024, the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS) announced that it had discovered the presence of *Listeria monocytogenes* bacteria in products containing the Defendant's ready-to-eat poultry products. More specifically, the FSIS determined that Defendant's ready-to-eat chicken was the source of the bacteria contamination.[5]

18. As a result of the FSIS's findings, Defendant recalled roughly 11,765,285 pounds of ready-to-eat meat and poultry products. Unfortunately, the meal Plaintiff consumed was one of the recalled Products. By consuming Defendant's Product, Plaintiff was personally injured.

19. Each of these food products was manufactured by Defendant, distributed to other establishments and then sold to consumers across the United States. Through marketing and sale, Defendant represented that the Products were safe for people to consume, including pregnant women and their newborns, adults aged 65 or older, and people with weakened immune systems.

20. Plaintiff and consumers did not know, and did not have a reason to know, that the Products purchased were contaminated with *L. monocytogenes* bacteria. Consumers expect the food they purchase to be safe for consumption and not contaminated by harmful bacteria. Other manufacturers formulate, produce, and sell non-harmful ready-to-eat proteins, which is evidence that the risk inherent with Defendant's Products is avoidable.

21. At the time of purchase, Defendant failed to notify Plaintiff, and other consumers, that the Product was contaminated with *L. monocytogenes* bacteria or otherwise presented a risk

---

[4] FSIS Announcement, available here: https://www.fsis.usda.gov/recalls-alerts/brucepac-recalls-ready-eat-meat-and-poultry-products-due-possible-listeria (last accessed October 21, 2024)
[5] FSIS Announcement, available here: https://www.fsis.usda.gov/recalls-alerts/brucepac-recalls-ready-eat-meat-and-poultry-products-due-possible-listeria (last accessed October 21, 2024)

of Listeriosis through the product labels, instructions, ingredients list, other packaging, advertising, or in any other manner. Therefore, Plaintiff purchased the Product, while lacking the knowledge that consuming the Product presented a serious health risk.

22. Plaintiff bargained for a product that was safe to consume and was thus deprived of the basis of the bargain when Defendant sold a Product containing *Listeria monocytogenes* bacteria, thereby exposing Plaintiff and Class Members (defined below) to potentially severe health consequences.

23. Plaintiff and Class Members were damaged as a result of purchasing the Product, including, among other things, they purchased and paid for a product that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant; and they were deprived of the benefit of their bargain; and they spent money on a product that did not have any value or had less value than warranted or that they would not have purchased and consumed had they known the truth about the product; and they spent money seeking medical treatment for listeriosis; and they were caused to miss time from work while recovering from their illnesses.

24. Plaintiff and Class Members purchased, and paid a premium, or otherwise paid more for the Product than they otherwise would have—had they known that the Product was contaminated with harmful bacteria such as *Listeria monocytogenes*. As a result of the losses described herein, Plaintiff seeks damages and equitable remedies.

## CLASS ALLEGATIONS

25. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

26. Pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/ or 23 (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action individually and on behalf of a multistate Class defined as:

> **National Class:** All persons in the United States who purchased the Product during the applicable statute of limitations.

27. In the alternative, pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiffs brings this class action on behalf of themselves, and on behalf of the subclass(es) defined as:

> **South Carolina Subclass:** All persons in the State of South Carolina that purchased the Product within the applicable limitations period.
>
> **Pennsylvania Subclass:** All persons in the State of Pennsylvania that purchased the Product within the applicable limitations period.

28. The National Class, the South Carolina Subclass, and the Pennsylvania Subclass are collectively referred to as the "Class". The Class excludes Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

29. Certification of Plaintiff's claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P 23(a), (b)(2)-(3), as well as 23(c)(4), are satisfied. Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

30. **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiff. Plaintiff believes that the identity of the Class members is known or knowable by Defendant or can be

discerned through reasonable means. Adequate notice can be given to Class Members directly using information maintained in Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

31. **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. The action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

   a. Whether Defendant knew or should have known that the Product posed a health risk thereby rendering it unsafe for its intended use;
   b. Whether Defendant's conduct was unlawful;
   c. Whether Defendant was unjustly enriched by its actions;
   d. Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief; and
   e. Whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages.

32. **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Class, having purchased for personal consumption the Product that was manufactured by Defendant. Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

33. **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because Plaintiff is a member of the Class and Plaintiff's interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interests in mind. Plaintiff has retained counsel competent and experienced

in complex class action litigation of this type, and Plaintiff intends to prosecute this action vigorously. Plaintiff and counsel will fairly and adequately protect the Class's interest.

34. **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's individual case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or the other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense they would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

35. **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class, making the final declaratory or injunctive relief appropriate.

36. Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude litigating it as a class action.

# CAUSES OF ACTION
(***On behalf of Plaintiff and the Classes***)

### COUNT 1: UNJUST ENRICHMENT

37. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

38. Plaintiff conferred a monetary benefit on Defendant when Plaintiff purchased the Product. Defendant failed to disclose to Plaintiff that its Products were unsafe and could cause listeriosis.

39. Defendant knew that Plaintiff conferred a benefit and retained that benefit. Defendant was unjustly enriched in retaining the revenues derived from Plaintiff. Retention of those funds under these circumstances is unjust and inequitable because Defendant failed to disclose that the Product was contaminated with harmful bacteria at the time of purchase.

40. Defendant's omissions caused injuries to Plaintiff and Class Members because they would not have purchased the Product if these facts were known.

41. After consuming the product and becoming ill, Plaintiff and Class Members no longer have the Product (or a receipt) and are unable to return the product to the place of purchase. Accordingly, the remedy provided by the recall is inadequate.

42. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and the Class Members, proceeds that Defendant unjustly received. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and the Class Members overpaid.

### COUNT 2: BREACH OF EXPRESS WARRANTIES

43. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

44. Defendant is, *inter alia*, engaged in the business of designing, manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce. The Product is then incorporated into other food items and sold to Plaintiff and Class Members at various grocery stores.

45. Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased the finished products that incorporated the Product. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging for the Product and through marketing and advertising. This packaging, marketing, and advertising constituted express warranties, and became part of the basis of the bargain, and are part of the contract between Plaintiff, other members of the Class, and Defendant.

46. Defendant purports through its advertising to create express warranties that the Product is of average quality, fit for the ordinary purpose, and is generally safe to consume repeatedly, consistently, and for years to come. Defendant touts "food safety [as] a top priority" and markets its food processing plants as having "the highest possible global accreditation for safe, high-quality foods."[6]

47. All conditions precedent to Defendant's liability under these contracts have been performed by Plaintiff and Class Members when they purchased the Product.

48. Consumption of foods contaminated with *Listeria monocytogenes* can cause listeriosis, which results in nausea, vomiting, and other serious symptoms. Despite Defendant's express warranties regarding the quality and safety of the Product, the Product contains *Listeria monocytogenes* and, thus, contains ingredients that are not safe to consume, and

---

[6] https://www.brucepac.com/facilities-food-safety/ (last accessed October 21, 2024)

therefore, the Product does not conform to the Defendant's promises and affirmations of fact contained on the packaging for the Product and Defendant's marketing and advertising.

49. Plaintiff and Class Members were exposed to products containing *Listeria monocytogenes* as a direct and proximate result of Defendant's breach of express warranties.

50. Plaintiff and Class Members would not have purchased the Product had they known the Product did not conform to the warranties. As a consequence of Defendant's breach of express warranties, Plaintiff and Class Members suffered personal injuries and financial damages.

51. Plaintiff and Class Members have been injured such that pre-suit notice to Defendant is not required.

52. Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

## COUNT 3: STRICT PRODUCTS LIABILITY

53. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

54. Plaintiff and Class Members were in the group of persons that Defendant should reasonably have foreseen as being subject to the harm caused by the defective Product insofar as Plaintiff and Class Members were the types of consumers for whom the Products were intended to be used. Plaintiff and Class Members used the Product as intended.

55. Defendant, which is engaged in the business of selling, manufacturing, and supplying the Product placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Product.

56. The Product supplied to Plaintiff and Class Members was defective and unreasonably dangerous when it left the hands of Defendant and it reached consumers, including Plaintiff and Class Members, without substantial alteration in the condition in which the Products were sold.

57. The Product was unreasonably and dangerously defective beyond the extent contemplated by ordinary persons with ordinary knowledge regarding these products.

58. Defendant's Product was defective due to inadequate testing and study, and inadequate reporting regarding the results.

59. The defective design, formulation, and labeling associated with the Product were substantial factors in bringing about the injuries to the Plaintiff and Class Members.

60. As the direct and proximate cause of the defective condition of the Product manufactured and supplied by Defendant, Plaintiff and Class Members were significantly exposed to hazardous product. Thus, Plaintiff and Class Members suffered, and continue to suffer, physical injuries and financial damages.

61. Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

## COUNT 4: BREACH OF IMPLIED WARRANTIES

62. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

63. At all relevant times, Defendant was a merchant engaged in the business of designing, manufacturing, and selling the Product. Plaintiff and Class Members formed a contract with Defendant at the time they purchased the Product.

64. Implied in the contract was a warranty that the Product was merchantable at the time of sale. Furthermore, at the time the contract was formed, Defendant knew, or should

have known, that Plaintiff and Class Members were relying on Defendant's skill or judgment in determining whether the Product was safe to consume and was free from hidden defects that would make the Product unsuitable for its intended purpose.

65. Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties. Defendant's retailers were not intended to be the ultimate consumers of the Product and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

66. Defendant breached the implied warranties about the Product and its qualities because the Product is unfit for the ordinary purposes for which such goods are used because the Product is contaminated with *L. monocytogenes* bacteria. Plaintiff and Class Members consumed the Products and developed symptoms of listeriosis within hours after consuming the Products.

67. Plaintiff and Class Members were significantly exposed to hazardous bacteria as a direct and proximate result of Defendant's breach of implied warranties. Plaintiff and Class Members would not have purchased the Product had they known the Product did not conform to the warranties. As a consequence of Defendant's breach of implied warranties, Plaintiff and Class Members suffered personal injuries and financial damages.

68. Plaintiff and Class Members have been injured such that pre-suit notice to Defendant is not required.

69. Plaintiff and Class Members have been injured and suffered damages in an amount to be determined at trial.

**COUNT 5: NEGLIGENCE**

70. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

71. Defendant was under a continuous duty to ensure its Products were safe for human consumption prior to placing the products into the stream of commerce. Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose any safety related defects because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product.

72. Defendant breached its duty of care owed to Plaintiff and Class Members by placing the contaminated Product into the stream of commerce. Defendant knew or should have known that *Listeria monocytogenes* bacteria in ready-to-eat meats would render the Product worthless to consumers because the Product carries a risk of serious illness if consumed.

73. Plaintiff and Class Members were exposed to hazardous bacteria as a direct and proximate result of Defendant's negligence. As a consequence of Defendant's negligence, Plaintiff and Class Members sustained injuries.

74. Plaintiff and the Class Members have suffered damages in an amount to be determined at trial.

## COUNT 6: MEDICAL MONITORING

75. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

76. *Listeria monocytogenes (L. monocytogenes)* is a species of pathogenic (disease-causing) bacteria that can survive under refrigeration and other food preservation measures. In other words, freezing a contaminated product will not eliminate or reduce the pathogen. *L. monocytogenes* is generally transmitted when food is processed, prepared, packed, transported or stored in environments contaminated with *L. monocytogenes*.

77. When a person eats food contaminated with *L. monocytogenes*, they may develop a disease called listeriosis. People who develop listeriosis after eating contaminated foods may see symptoms anywhere between a few hours up to three months after eating contaminated food.[7]

78. Plaintiff and the Class Members have been exposed to the harmful bacteria *L. monocytogenes* as a direct and proximate result of Defendant's tortious actions. As a result of their exposure to this pathogen, consumers like Plaintiff and Class Members are at a significantly increased risk of developing listeriosis and other future health complications. More serious forms of listeriosis can develop up to three (3) months after consumption and babies born with a listeriosis infection can develop severe health complications that require lifelong medical attention. This increased risk makes periodic diagnostic medical examinations reasonably necessary.

79. Early diagnosis of a potentially fatal health condition has significant value for Plaintiff and Class Members because such diagnoses will help them monitor and minimize the harm therefrom.

80. Upon information and belief, monitoring procedures exist that make early detection and treatment of listeriosis or related medical complications possible and beneficial. These monitoring procedures are reasonably necessary as a direct and proximate result of Plaintiff's and Class Members' consumption of Defendant's Product.

81. As a direct and proximate result of Plaintiff's and Class Members' exposure to the *L. monocytogenes* bacteria, surveillance in the form of periodic medical examinations is reasonable and necessary, because such surveillance will provide early detection and diagnosis of harmful and debilitating diseases resulting from exposure to *Listeria monocytogenes* and, as a remedy for the conduct alleged herein.

---

[7] Listeria (Listeriosis), U.S. Food & Drug Administration, available here: https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis (last accessed October 21, 2024)

82. Plaintiff and Class Members are seeking damages reflecting the quantifiable costs of medical monitoring.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the putative Class, prays for judgment in their favor and against Defendant as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and counsel for Plaintiff as Class Counsel;

B. For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For pre- and post-judgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

I. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

*-SIGNATURE PAGE TO FOLLOW-*

Respectfully submitted,

DATED: October 23, 2024

                                                  <u>/s/ *Stuart Guber*</u>
**POULIN | WILLEY | ANASTOPOULO**
Paul J. Doolittle, Esq.*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: stuart.guber@poulinwilley.com
cmad@poulinwilley.com
paul.doolittle@poulinwilley.com

*Attorneys for Plaintiffs*

*\*Pro Hac Vice forthcoming*